**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANGEL G. PEREZ,<br><br>Plaintiff,<br><br>v.<br><br>STEEL INTERIORS, LLC,<br>NATHAN STITH, and<br>MARTIN RICKER,<br><br>Defendants. | CIVIL ACTION<br><br>No. 2:26-cv-7768<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff Angel G. Perez, by and through his undersigned counsel, hereby files this Civil Action Complaint against Defendants Steel Interiors, LLC, Nathan Stith, and Martin Ricker, and in support thereof avers as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Angel G. Perez ("Plaintiff" or "Mr. Perez"), a Hispanic man, brings this action against his former employer, Defendant Steel Interiors, LLC ("Steel Interiors" or the "Company"); its Operations Manager, Defendant Nathan Stith ("Mr. Stith"); and its founder, President, and owner, Defendant Martin Ricker ("Mr. Ricker") (collectively, "Defendants"), for race discrimination, hostile work environment, retaliation, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA").

2. Nathan Stith, a Caucasian supervisor, repeatedly demeaned Mr. Perez and other Hispanic workers on the basis of their race, telling them that they "always create a brown problem," that "[y]ou brown people can't do anything right," and that he "can't wait until you're all gone."

When Mr. Perez complained to Martin Ricker, the Company's Caucasian President, the Company did nothing to stop it. Instead, within hours of a meeting arranged in response to Mr. Perez's complaint, Mr. Stith resumed his racial attacks. Days before Mr. Perez's employment ended, Mr. Stith physically grabbed Mr. Perez by his shirt while calling him a "brown motherf**." Mr. Ricker then put off Mr. Perez's repeated, urgent requests to meet, and Mr. Stith barred Mr. Perez from coming to the office. Left with no avenue for relief, Mr. Perez was constructively discharged on April 24, 2025.

## THE PARTIES

3. Plaintiff Angel G. Perez is an adult individual who resides in Philadelphia, Pennsylvania. Plaintiff is Hispanic.

4. Defendant Steel Interiors, LLC is a Pennsylvania limited liability company with a registered office and principal place of business at 231 Horsham Road, Horsham, Pennsylvania 19044, in Montgomery County.

5. Steel Interiors provides construction services for commercial and residential spaces in the Philadelphia region, including drywall, light gauge metal framing, and insulation.

6. Upon information and belief, at all times relevant hereto, Steel Interiors employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, and is therefore an "employer" within the meaning of 42 U.S.C. § 2000e(b). The number of employees of an employer considers part time workers, those on paid and unpaid leave, employees from integrated enterprises, and the issue presents a substantive element the plaintiff must prove, and not a jurisdictional matter, absent evidence of essentially fraud. *See* Nesbit v. Gears Unlimited, Inc., 347 F.3d 72 (3d Cir. 2003).

7. At all times relevant hereto, Steel Interiors employed four (4) or more persons within the Commonwealth of Pennsylvania and is therefore an "employer" within the meaning of the PHRA, 43 P.S. § 954(b).

8. Defendant Nathan Stith is an adult individual who, at all times relevant hereto, was employed by Steel Interiors as its Operations Manager and held supervisory authority over Plaintiff. Mr. Stith is Caucasian. Upon information and belief, Mr. Stith resides in the Commonwealth of Pennsylvania at 826 2nd Street Pike, #Pl, Southampton, PA 18966.

9. Defendant Martin Ricker is an adult individual who, at all times relevant hereto, was the founder, President, and owner of Steel Interiors and directly supervised both Plaintiff and Mr. Stith. Mr. Ricker is Caucasian. Upon information and belief, Mr. Ricker resides in the Commonwealth of Pennsylvania at 636 Griffiths Road, Warrington, PA 18976.

10. At all times relevant hereto, Mr. Stith and Mr. Ricker acted within the course and scope of their employment with, and as agents of, Steel Interiors.

11. At all times relevant hereto, Plaintiff was an "employee" of Steel Interiors within the meaning of 42 U.S.C. § 2000e(f) and 43 P.S. § 954(c).

## JURISDICTION AND VENUE

12. This Court has original subject matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) and 42 U.S.C. § 2000e-5(f)(3), because those claims arise under the laws of the United States and seek redress for violations of civil rights.

13. This Court has supplemental jurisdiction over Plaintiff's PHRA claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

14. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because Steel Interiors resides in and conducts business in this District, a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, the unlawful employment practices alleged herein were committed in this District, and, upon information and belief, the employment records relevant to those practices are maintained and administered in this District.

## ADMINISTRATIVE EXHAUSTION

15. On June 2, 2025, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was assigned Charge No. 530-2025-06663 (the "Charge"). The Charge alleged discrimination on the basis of race and national origin, harassment and hostile work environment, retaliation, and constructive discharge.

16. In the Charge, Plaintiff expressly requested that it be filed with both the EEOC and the Pennsylvania Human Relations Commission ("PHRC"), and the Charge was dual-filed with the PHRC.

17. The Charge named Steel Interiors as Respondent and specifically identified Mr. Stith and Mr. Ricker as Respondents in its particulars, describing their conduct.

18. The Charge was filed within 180 days of the last discriminatory and retaliatory act, Plaintiff's constructive discharge on April 24, 2025, and was therefore timely under both Title VII, 42 U.S.C. § 2000e-5(e)(1), and the PHRA, 43 P.S. § 959(h). Defendants' harassment of Plaintiff constituted a continuing violation, at least one act of which occurred within the applicable limitations period.

19. More than one (1) year has elapsed since the Charge was dual-filed with the PHRC, and the PHRC has neither dismissed the Charge nor entered into a conciliation agreement to which

Plaintiff is a party. Plaintiff is therefore entitled to bring his PHRA claims in this Court. 43 P.S. § 962(c).

20. On September 10, 2026 the EEOC issued Plaintiff a Notice of Right to Sue with respect to the Charge. A true and correct copy of the Notice of Right to Sue is attached hereto as Exhibit "A." This action is filed within ninety (90) days of Plaintiff's receipt of that Notice. 42 U.S.C. § 2000e-5(f)(1).

21. Plaintiff has exhausted his administrative remedies and has satisfied all conditions precedent to the filing of this action.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment with Steel Interiors

22. Steel Interiors hired Plaintiff on or about August 6, 2019, initially as a metal framer/carpenter.

23. During his first year of employment, Plaintiff worked under the supervision of Mr. Stith. Plaintiff's early experience at the Company was positive, and he was grateful for the opportunity.

24. Approximately one year into his employment, while working on the Luxor project on City Avenue, Steel Interiors moved Plaintiff into a supervisory role as a Drywall Foreman, in which he was responsible for supervising and communicating with work crews and managing subcontractors on the Company's jobs.

25. Steel Interiors informed Plaintiff that he was being given these responsibilities because he did not have a language barrier with many of the workers. Plaintiff received no formal training for the position. He nevertheless worked hard every day and consistently gave his best effort.

26. Mr. Ricker later assigned Plaintiff additional payroll responsibilities, reflecting the trust the Company placed in Plaintiff's work. When Mr. Ricker assigned these duties, he specifically told Plaintiff that if anything was bothering him, or if there was anything Mr. Ricker could improve as a manager, Plaintiff should let him know.

27. At the time of his separation, Plaintiff earned approximately $40.00 per hour.

28. At all times relevant hereto, Plaintiff was qualified for his position and performed his duties satisfactorily.

29. In his role as Drywall Foreman, Plaintiff was directly supervised by Mr. Ricker, who also supervised Mr. Stith.

30. At all times relevant hereto, Mr. Stith, as Operations Manager, exercised supervisory authority over Plaintiff, including by directing Plaintiff's daily work, assigning him to job sites, dictating his hours and weekend work, and controlling whether he could leave the job site to go to the Company's office. Upon information and belief, Mr. Stith was empowered by Steel Interiors to take, or to effectively recommend, tangible employment actions affecting Plaintiff and the crews he supervised.

31. Upon information and belief, at all times relevant hereto, Steel Interiors did not maintain a human resources department, did not maintain or disseminate an effective equal employment opportunity or anti-harassment policy, and did not maintain any procedure for investigating complaints of discrimination or harassment. Plaintiff never received any such policy or training.

**B. Mr. Stith's Race-Based Harassment of Plaintiff and Other Hispanic Workers**

32. As time progressed, Mr. Stith engaged in a pattern of aggressive, demeaning, and racially hostile conduct toward Plaintiff and the Company's other Hispanic workers, including inappropriate remarks, raised voices, and confrontational interactions.

33. Hispanic employees frequently told Plaintiff that they did not want Mr. Stith to contact them directly and that they preferred not to be on a job site when Mr. Stith was present.

34. On multiple occasions when issues arose on job sites, Mr. Stith told Plaintiff and Hispanic crew members, "You guys always create a brown problem," and "everybody's got a brown problem."

35. Mr. Stith also remarked about the Hispanic workers that "they come to this country to work and don't want to work."

36. Mr. Stith was generally hostile toward the Company's Spanish-speaking employees, including Plaintiff, frequently telling them to "f*** off" or to "get back to work."

37. When Plaintiff attempted to respond to Mr. Stith or to explain a situation, Mr. Stith would often yell at him.

38. Mr. Stith's use of the term "brown" referred to the race, ethnicity, and skin color of Plaintiff and his Hispanic co-workers.

39. Upon information and belief, Mr. Stith did not make comparable remarks to, or engage in comparable conduct toward, Caucasian employees.

40. Initially, Plaintiff attempted to overlook Mr. Stith's conduct, but it continued and became directed at him personally.

**C. Plaintiff's First Complaint to Mr. Ricker**

41. After continuing to experience Mr. Stith's comments and treatment, Plaintiff built the courage to report his concerns to Mr. Ricker. Because he feared Mr. Stith, Plaintiff waited until Mr. Stith was on vacation to raise the issue, in or around August of 2024.

42. Plaintiff complained to Mr. Ricker about Mr. Stith's discriminatory treatment of him and of the Company's other Hispanic workers, including Mr. Stith's derogatory "brown" remarks.

43. Upon information and belief, when Mr. Stith returned from vacation, Mr. Ricker informed Mr. Stith of Plaintiff's complaint.

44. Mr. Stith immediately called Plaintiff and stated that Mr. Ricker wanted the three of them to sit down and discuss the way Mr. Stith spoke to Plaintiff and addressed situations.

45. During that discussion, Mr. Stith denied that the conduct Plaintiff described was occurring and stated that, if he ever spoke that way, it was only because he was upset. Mr. Stith offered a perfunctory apology, and the conversation moved on.

46. Upon information and belief, Steel Interiors did not investigate Plaintiff's complaint, did not discipline Mr. Stith, and took no corrective action of any kind.

**D. Mr. Stith Escalates His Racial Harassment Within Hours of Plaintiff's Complaint**

47. Within hours of that discussion, another issue arose on a job site. Mr. Stith again directed racial remarks at Plaintiff and his Hispanic co-workers, stating, "You brown people can't do anything right," and, "I can't wait until you're all gone."

48. During that incident and others like it, Mr. Stith yelled directly at Plaintiff and the Hispanic employees.

49. Mr. Stith's renewed and escalated racial attacks, occurring within hours of a meeting convened because of Plaintiff's complaint, were motivated by Plaintiff's race and by his having complained about Mr. Stith's discriminatory conduct.

**E. Plaintiff's Second Complaint to Mr. Ricker**

50. Plaintiff again reported Mr. Stith's conduct to Mr. Ricker.

51. In response, Mr. Ricker told Plaintiff that Monday morning meetings would be implemented to address the concerns.

52. Upon information and belief, those meetings never occurred. Steel Interiors took no action to investigate or remedy Mr. Stith's conduct, and the situation continued to worsen.

**F. Mr. Stith Physically Assaults Plaintiff While Hurling Racial Slurs**

53. In or around April 2025, a few days before Plaintiff's constructive discharge, Mr. Stith physically grabbed Plaintiff and also another Hispanic worker by their shirts while saying specifically or to the effect of-, "You brown mother*s need to work here" and "You f*ing work where I tell you what to do."

54. Mr. Stith's physical assault of Plaintiff, accompanied by a racial slur, was humiliating, threatening, and frightening, and caused Plaintiff to fear for his physical safety at work.

**G. Mr. Ricker Puts Off Plaintiff's Urgent Requests to Meet, and Mr. Stith Bars Plaintiff from the Office**

55. Following the assault, Plaintiff texted Mr. Ricker that he urgently needed to speak with him. Mr. Ricker responded that he was in meetings all day and would let Plaintiff know when he could come in. Mr. Ricker never did so.

56. The following day, Mr. Stith called Plaintiff regarding a job site issue. During the call, Plaintiff could hear Mr. Ricker in the background with Mr. Stith.

57. Plaintiff again texted Mr. Ricker requesting to speak with him, and Mr. Ricker again responded that he was in meetings.

58. The next day was payroll day, on which Plaintiff ordinarily went to the Company's office to perform his payroll duties, which would have given him the opportunity to speak with Mr. Ricker in person. Mr. Stith instructed Plaintiff not to go to the office and to remain on the job site.

59. Plaintiff reasonably understood that he was being kept away from the Company's President and that his complaints of discrimination and assault would not be addressed.

## H. Disparate Terms and Conditions of Employment

60. Throughout his employment, Mr. Stith required Plaintiff to be available on job sites or by phone seven days a week, which significantly affected Plaintiff's personal and family life.

61. On multiple occasions, Mr. Stith called Plaintiff on weekends and asked what he was doing. When Plaintiff responded that he was spending time with his family, Mr. Stith told him to "wrap that up" and get to the job site. Out of concern for keeping his job, Plaintiff complied.

62. Mr. Stith required Plaintiff to work weekends and to stay late, which, upon information and belief, was not required of similarly situated Caucasian employees.

63. Plaintiff was not paid overtime compensation for this additional work, while, upon information and belief, Caucasian employees received overtime compensation.

## I. Plaintiff's Constructive Discharge

64. By April 2025, despite Plaintiff's repeated complaints, Steel Interiors had taken no meaningful action. Instead, Mr. Stith's racial harassment had escalated to a physical assault, Mr. Ricker had put off Plaintiff's urgent requests to meet, and Mr. Stith had barred Plaintiff from the office.

65. Defendants' discriminatory and retaliatory conduct made Plaintiff's working conditions so intolerable that a reasonable person in his position would have felt compelled to resign.

66. On the morning of Thursday, April 24, 2025, Plaintiff was forced to resign. He packed all Company property belonging to Mr. Ricker into Mr. Ricker's truck, left it at the Company's office, and at 8:05 a.m. sent Mr. Ricker a text message stating that he had left the keys and the Company's belongings, including the Company phone, in the truck, and thanking Mr. Ricker.

67. Mr. Ricker thereafter responded by text message:

> I was not avoiding having a conversation with you I was hoping to catch up with you today I'm sorry this is where it ended up I consider you a friend and hope you know this is not what I want

68. Mr. Ricker's message confirms that he knew Plaintiff had been seeking to speak with him and that he had not done so.

69. At 11:13 a.m. that day, Mr. Ricker sent Plaintiff another text message stating: "I'm sorry if I failed you as a boss Good luck in everything you do!"

70. Neither of Mr. Ricker's messages asked why Plaintiff was leaving, offered to investigate or address Plaintiff's complaints, or invited Plaintiff to return. No one from Steel Interiors thereafter contacted Plaintiff to address his complaints.

71. Plaintiff's constructive discharge was the culmination of Defendants' discriminatory harassment and of their retaliation against him for complaining about it.

**J. Defendants' Liability and Plaintiff's Damages**

72. Defendants subjected Plaintiff to the foregoing treatment because of his race and because he complained about race discrimination.

73. Steel Interiors is liable for Mr. Stith's harassment because Mr. Stith was Plaintiff's supervisor and because Steel Interiors, through its President and owner, had actual knowledge of the harassment and failed to take prompt and appropriate remedial action. Steel Interiors cannot avail itself of any affirmative defense, because, upon information and belief, it had no anti-harassment policy or complaint procedure, and Plaintiff reasonably and repeatedly reported the harassment to the highest-ranking official in the Company.

74. Defendants acted intentionally, with malice, and with reckless indifference to Plaintiff's federally and state-protected rights.

75. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment of life, and other economic and non-economic damages.

## COUNT I
### Title VII — Race Discrimination (Disparate Treatment)
***(Plaintiff v. Defendant Steel Interiors, LLC)***

76. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

77. Title VII makes it an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. 42 U.S.C. § 2000e-2(a)(1).

78. Plaintiff is a member of a protected class by virtue of his race (Hispanic).

79. Plaintiff was qualified for his position.

80. Steel Interiors subjected Plaintiff to adverse employment actions, including requiring him to work weekends and late hours not required of Caucasian employees, denying him overtime compensation paid to Caucasian employees, subjecting him to physical assault and racial abuse, and constructively discharging him.

81. These actions occurred under circumstances giving rise to an inference of discrimination, including Plaintiff's supervisor's repeated explicit references to the race of Plaintiff and his Hispanic co-workers and the more favorable treatment of Caucasian employees.

82. Plaintiff's race was a motivating factor in, and a determinative cause of, the foregoing adverse actions.

83. Steel Interiors acted with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages under 42 U.S.C. § 1981a(b)(1).

84. As a direct and proximate result of Steel Interiors' violations of Title VII, Plaintiff has suffered the damages described herein.

## COUNT II
**Title VII — Hostile Work Environment**
***(Plaintiff v. Defendant Steel Interiors, LLC)***

85. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

86. Plaintiff suffered intentional discrimination because of his race, including repeated racial remarks by his supervisor and a physical assault accompanied by a racial slur.

87. The discrimination was severe or pervasive, and it altered the terms and conditions of Plaintiff's employment and created an abusive working environment.

88. The discrimination detrimentally affected Plaintiff and would have detrimentally affected a reasonable person of the same race in his position.

89. Steel Interiors is liable for the hostile work environment because it was created by Plaintiff's supervisor; because the harassment culminated in Plaintiff's constructive discharge; and, independently, because Steel Interiors knew of the harassment through Plaintiff's repeated complaints to its President and owner and failed to take prompt and appropriate remedial action.

90. The hostile work environment was so intolerable that it compelled Plaintiff's resignation, constituting a constructive discharge.

91. By the foregoing conduct, Steel Interiors violated 42 U.S.C. § 2000e-2(a)(1).

92. Steel Interiors acted with malice or with reckless indifference to Plaintiff's federally protected rights.

93. As a direct and proximate result of Steel Interiors' violations of Title VII, Plaintiff has suffered the damages described herein.

## COUNT III
**Title VII — Retaliation**
***(Plaintiff v. Defendant Steel Interiors, LLC)***

94. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

95. Title VII makes it an unlawful employment practice for an employer to discriminate against any employee because he has opposed any practice made an unlawful employment practice by Title VII. 42 U.S.C. § 2000e-3(a).

96. Plaintiff engaged in protected activity by complaining to Mr. Ricker, on at least two occasions, about Mr. Stith's race-based harassment of Plaintiff and other Hispanic workers, and by seeking to report Mr. Stith's race-based physical assault.

97. Steel Interiors took materially adverse actions against Plaintiff that would dissuade a reasonable worker from making or supporting a charge of discrimination, including: subjecting

Plaintiff to escalated racial harassment within hours of his first complaint; subjecting him to a physical assault; refusing his requests to meet; barring him from the Company's office; and constructively discharging him.

98. There is a causal connection between Plaintiff's protected activity and the adverse actions, as demonstrated by, among other things, the unusually suggestive temporal proximity between them—including the renewal of Mr. Stith's racial attacks within hours of the meeting convened because of Plaintiff's complaint—and the pattern of antagonism that followed.

99. Steel Interiors acted with malice or with reckless indifference to Plaintiff's federally protected rights.

100. As a direct and proximate result of Steel Interiors' violations of Title VII, Plaintiff has suffered the damages described herein.

**COUNT IV**
**PHRA — Race Discrimination**
***(Plaintiff v. Defendant Steel Interiors, LLC)***

101. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

102. The PHRA makes it an unlawful discriminatory practice for an employer, because of an individual's race, to discharge the individual or otherwise to discriminate against him with respect to compensation, hire, tenure, terms, conditions, or privileges of employment. 43 P.S. § 955(a).

103. For the reasons set forth in Count I, Steel Interiors discriminated against Plaintiff because of his race in violation of 43 P.S. § 955(a).

104. As a direct and proximate result of Steel Interiors' violations of the PHRA, Plaintiff has suffered the damages described herein.

**COUNT V**
**PHRA — Hostile Work Environment**
***(Plaintiff v. Defendant Steel Interiors, LLC)***

105. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

106. For the reasons set forth in Count II, Steel Interiors subjected Plaintiff to a hostile work environment because of his race, culminating in his constructive discharge, in violation of 43 P.S. § 955(a).

107. As a direct and proximate result of Steel Interiors' violations of the PHRA, Plaintiff has suffered the damages described herein.

**COUNT VI**
**PHRA — Retaliation**
***(Plaintiff v. Defendant Steel Interiors, LLC)***

108. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

109. The PHRA makes it an unlawful discriminatory practice for any person or employer to discriminate in any manner against any individual because such individual has opposed any practice forbidden by the PHRA. 43 P.S. § 955(d).

110. For the reasons set forth in Count III, Steel Interiors retaliated against Plaintiff for opposing race discrimination, in violation of 43 P.S. § 955(d).

111. As a direct and proximate result of Steel Interiors' violations of the PHRA, Plaintiff has suffered the damages described herein.

## COUNT VII
**PHRA — Aiding and Abetting**
***(Plaintiff v. Defendants Nathan Stith and Martin Ricker)***

112. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

113. The PHRA makes it an unlawful discriminatory practice for any person, employer, or employee to aid, abet, incite, compel, or coerce the doing of any act declared by the PHRA to be an unlawful discriminatory practice. 43 P.S. § 955(e).

114. Mr. Stith, as Plaintiff's supervisor, aided, abetted, incited, compelled, and coerced Steel Interiors' unlawful discrimination and retaliation by, among other things: perpetrating the race-based harassment described herein; physically assaulting Plaintiff while using a racial slur; escalating his harassment in retaliation for Plaintiff's complaint; and barring Plaintiff from the office to prevent him from reporting the assault to Mr. Ricker.

115. Mr. Ricker, as Steel Interiors' President and owner and as Plaintiff's and Mr. Stith's supervisor, aided, abetted, incited, compelled, and coerced Steel Interiors' unlawful discrimination and retaliation by, among other things: failing to take prompt remedial action despite actual knowledge of Mr. Stith's race-based harassment; disclosing Plaintiff's complaint to Mr. Stith without taking any protective or corrective action; failing to implement even the meetings he promised; and putting off Plaintiff's urgent requests to meet after the assault.

116. As a direct and proximate result of Mr. Stith's and Mr. Ricker's violations of the PHRA, Plaintiff has suffered the damages described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Angel G. Perez respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally to the extent permitted by law, and award the following relief:

(A) A declaration that Defendants' conduct violated Title VII and the PHRA;

(B) Equitable relief prohibiting Defendants from continuing to engage in discriminatory and retaliatory employment practices, and requiring Steel Interiors to adopt and enforce effective anti-discrimination, anti-harassment, and anti-retaliation policies and training;

(C) Back pay, including lost wages, overtime, and the value of lost benefits, with prejudgment interest;

(D) Front pay in lieu of reinstatement;

(E) Compensatory damages for emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment of life, and other non-economic harm;

(F) Punitive damages against Steel Interiors under Title VII, 42 U.S.C. § 1981a(b)(1);

(G) An award to offset any adverse tax consequences of a lump-sum recovery;

(H) Reasonable attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. § 2000e-5(k) and 43 P.S. § 962(c.2);

(I) Pre-judgment and post-judgment interest; and

(J) Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

DEREK SMITH LAW GROUP, PLLC

By: */s/ Christopher J. DelGaizo, Esquire*
Christopher J. DelGaizo, Esquire
PA Attorney I.D. No. 200594
1628 Pine Street
Philadelphia, PA 19103
Tel: (215) 391-4790
Cell: (610) 844-1779
Fax: (215) 501-5911
Email: Chris@dereksmithlaw.com
*Counsel for Plaintiff, Angel G. Perez*

Dated: October 9, 2026